ADELE M. FEIBER, Appellant, *v.* EDWARD COPELAND, Respondent.

First Department, May 29, 1931.

*Otto A. Samuels,* for the appellant.

*Edward Copeland* in person [*Mortimer Hays* and *Benjamin S. Kirsh* with him on the brief], for the respondent.

O'MALLEY, J. As the issues were finally framed the action is for moneys had and received and is predicated upon an implied promise on the part of the defendant to repay the sum of $5,000, which is being held by the United States Mortgage and Trust Company to the credit of this action.

The plaintiff is a dress designer of high repute in her calling and earns substantial remuneration. The defendant is an attorney and for about a year prior to October 26, 1927, had represented the plaintiff professionally in dealings with her employers and in several actions. Discussions were had between them, and plaintiff was finally convinced that, due to conditions in the trade, an independent designers' unit might treat with manufacturers on more equal terms and that it would be advantageous for the plaintiff to go into business for herself. Interviews between the parties led to the plaintiff signing letters, agreements and affidavits pursuant to one of which the $5,000 was paid to this defendant on October 26, 1927.

At about seven P. M. on this date plaintiff had an appointment with one Ginsberg at a restaurant for the purpose of interesting him in the proposition. She received a telephone call from the defendant requesting her to attend at his residence, where she arriv d at about six-thirty P. M. Pursuant to instructions received plaintiff brought with her a blank check. She was requested to sign some papers which she said seemed lengthy and which she told the defendant she would not have time to read thoroughly, inasmuch as she desired to keep promptly the appointment with Ginsberg. The defendant reminded her that she had always fully trusted him in her various affairs and that while the papers she was asked to sign in form bound her to work for the defendant, they really did not mean anything, and were to be passed over to the corporation to be formed, together with the check for $5,000, so that capital could be raised and the matters presented to interest people in the proposition. Persuaded by these and similar arguments, the plaintiff gave the defendant the $5,000 and signed the papers. These in form provide that the plaintiff, though a dress designer, was to work for the defendant, not engaged in any allied business, but who was an active practitioner at the bar. A subsequent

agreement signed by the plaintiff had a provision to the effect that the defendant would receive a proportionate share for some eight years of plaintiff's salary should she remain with her employer.

Thereafter, according to the plaintiff, on numerous other occasions she protested to the defendant that she did not fully understand the legal import of papers she was requested to sign and that she desired the advice of an independent attorney. She was always assured, according to her testimony, that these papers were mere formalities; that they really did not mean anything; that she might have the advice of another attorney; and that everything would be changed to suit her ultimate desires before the corporation should be formed. In this she is corroborated by the testimony of another attorney who then shared defendant's living quarters, and who, because of such association, refused to act for her. The plaintiff also testified that though she repeatedly requested and demanded such, she had been unable to procure a copy of the papers she had signed from time to time.

The corporation was never formed and the project was abandoned by the plaintiff, at least, who continued with her former employers after she had disclosed to them her interest in the proposition made by the defendant.

While the cross-examination of the plaintiff adduced much testimony tending to show that she understood many of the transactions, still we are of opinion that she established a *prima facie* case and that her complaint should not have been dismissed at the close of her case. There was, we think, sufficient evidence under the law applicable to call upon the defendant to go forward with his proof in defense. With the merits of the controversy and the ultimate outcome we are not here concerned.

As this was a dismissal at the close of the plaintiff's case, she must receive the advantage of every inference that can properly be drawn from the facts presented, and such facts must be deemed true. (*Kraus* v. *Birnbaum*, 200 N. Y. 130, 133.)

As already stated, the defendant is an attorney and at the times in question occupied a fiduciary relationship with respect to the plaintiff. Even when acting outside of a professional relationship and dealing at arm's length with another party, an attorney is still held to the high ideals and conduct of his office. (*Matter of Dolphin*, 240 N. Y. 89; *Matter of Somerville*, 183 App. Div. 445; *Matter of Isaacs*, 172 id. 181.)

When, moreover, an attorney seeks to avail himself of a contract with his client, he is bound to establish affirmatively that it was made by the client with full knowledge of all the material circumstances; that it was in every respect free from fraud on his part

or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him. (*Whitehead* v. *Kennedy*, 69 N. Y. 462, 466; *Matter of Howell*, 215 id. 466, 472; *Matter of Booth*, 215 App. Div. 516.)

Under these authorities and particularly in view of the plaintiff's testimony that she was repeatedly assured that the documents signed by her in reality were formal and executed in order that capital might be raised and that everything would be arranged to her satisfaction before the formation of the corporation, we are of opinion that plaintiff clearly established a *prima facie* case.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., McAVOY, MARTIN and TOWNLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.