CANADAY COOLER COMPANY, INC., Appellant, *v.* STATEN ISLAND SHIPBUILDING COMPANY, Respondent, Impleaded with PORT RICHMOND MANUFACTURING COMPANY, INC., Defendant.

First Department, February 26, 1932.

*Jacob M. Zinaman,* for the appellant.

*James Gillin* of counsel [*Henry W. Baird,* attorney], for the respondent.

TOWNLEY, J.  Plaintiff brought this action to recover for the breach of a written contract for the delivery of 500 electric water coolers on or before July 1, 1928.  The original order which constituted the contract between the parties was signed by the defendant, Port Richmond Manufacturing Company, Inc., under its then corporate name, " Heat Transfer Products, Inc., Division Staten Island Shipbuilding Co., Jacocks, Pres."  The Heat Transfer Products, Inc., was a subsidiary of the Staten Island Shipbuilding Company which owned or controlled all of its capital stock and which limited the business of the subsidiary to the sale of articles manufactured by the Staten Island Shipbuilding Company.

Plaintiff in its complaint based its claim of liability against the defendant, Staten Island Shipbuilding Company, upon the assertions (1) that the obligations of the Port Richmond Manufacturing Company under this contract were assumed by the Staten Island Shipbuilding Company, and (2) that the contract was made directly between the plaintiff and both of the defendants.  The complaint was dismissed as to the defendant, Staten Island Shipbuilding Company, at the conclusion of the plaintiff's case and the jury returned a directed verdict in favor of the plaintiff against the Port Richmond Manufacturing Company, Inc., for the amount claimed in the complaint.  Plaintiff appeals from that part of the judgment which dismissed its complaint as to the Staten Island Shipbuilding Company.

Appellant urges that Staten Island Shipbuilding Company is liable on the contract in suit upon the ground that it is a parent corporation which wholly dominated its subsidiary and that the subsidiary, in making the contract, acted merely as its agent. (*United States* v. *Reading Co.,* 253 U. S. 26; *Chicago, M. & St. P. R. Co.* v. *Minn. Civic Assn.,* 247 id. 490; *United States* v. *Del., Lack. & West. R. R. Co.,* 238 id. 516; *The Willem Van Driel, Sr.,* 252 Fed. 35; *Berkey* v. *Third Avenue R. Co.,* 244 N. Y. 84.)  To maintain an action on the " instrumentality " theory, according to the requirements laid down by the Court of Appeals in the *Berkey Case (supra),* liability must be predicated on a relation analogous to that of principal and agent.  In the complaint before us a joint contract is alleged which precludes the application of the " instrumentality " theory.

Aside from any question of pleading, however, appellant having elected to treat Port Richmond Manufacturing Company, Inc.,

as principal and having proceeded to judgment against it on this theory cannot now be heard to claim that it was a mere agent. (*Tuthill* v. *Wilson*, 90 N. Y. 423, 428; 2 Mechem Agency, § 1759; 1 Freeman Judgments, § 479; Powell Parent & Subsidiary Corporations, § 41; *Stark Electric R. Co.* v. *McGinty Contracting Co.*, 238 Fed. 657.)

The judgment taken against the subsidiary corporation, however, does not estop plaintiff from proving an assumption by the Staten Island Shipbuilding Company of the obligations of its subsidiary. There was testimony from which the jury might have inferred that the authorized representative of the parent company, to save its investment in raw materials, had agreed, after the default of its subsidiary, that it would carry out the contract, that it would invoice the goods directly to the plaintiff, and that it would allow on the invoiced prices the amount of liquidated damages provided for in the original contract with the subsidiary. In further support of this testimony plaintiff offered certain documentary evidence to show direct negotiations, without protest, with the parent company, Staten Island Shipbuilding Company. For this limited purpose they should have been admitted. In addition to this, plaintiff offered in evidence three invoices sent by the Staten Island Shipbuilding Company for coolers which it had delivered direct to plaintiff. These invoices should have been admitted as confirmatory of the assumption agreement pleaded. The proposed tripartite agreement excluded from evidence was admissible, not to prove the acceptance by the defendant of the terms therein, but as confirming plaintiff's testimony of the direct negotiations which it had had with the parent company and the assumption by it of the obligations. The rulings made excluding certain offers of testimony by the plaintiff should be reconsidered on the new trial in the light of this opinion.

On the motion to dismiss at the end of the plaintiff's case, the evidence must be construed most liberally in favor of the plaintiff. (*Feiber* v. *Copeland*, 232 App. Div. 504.) Plaintiff had made out a *prima facie* case of assumption of the contract by the parent company which should have been submitted to the jury.

The judgment so far as appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

Finch, P. J., O'Malley and Sherman, JJ., concur; Merrell, J., dissents.

Merrell, J. (dissenting). I dissent and vote to affirm the judgment dismissing the plaintiff's complaint on the ground that there was no sufficient evidence to charge the defendant, respond-

ent, with liability to answer to the plaintiff in damages. The defendant, respondent, was not a party to the contract between the plaintiff and Heat Transfer Products, Inc., or its successor, the defendant Port Richmond Manufacturing Company, Inc., for the manufacture and sale to plaintiff of the 500 portable electric water coolers. The written acceptance of the written order of the plaintiff, addressed to Heat Transfer Products, Inc., requesting the last-named corporation to manufacture the 500 water coolers, at the foot of plaintiff's order, was that of Heat Transfer Products, Inc. The signature to such acceptance by Heat Transfer Products, Inc., " Division Staten Island Shipbuilding Co., Jacocks, Pres.," was appended to such acceptance by Jacocks, the president of Heat Transfer Products, Inc., without the knowledge or consent of the defendant, respondent, or any of its officers. Although this acceptance is purported to have been signed by the defendant, respondent, by Jacocks, as president, Jacocks was never the president of defendant, respondent, nor in any manner, either as a stockholder, officer, director or otherwise, was he ever connected with the defendant, respondent. Likewise, the name of the defendant, respondent, which Canaday, plaintiff's president and general manager, testified appeared on the door of the New York office of Heat Transfer Products, Inc., was not shown to have been placed thereon with the knowledge, consent or by any authority of the said defendant, respondent. Jacocks, sworn as a witness for plaintiff at the trial, on cross-examination, admitted that he had placed the name of the defendant, respondent, on said door on his own responsibility. Likewise, the use of the corporate name of the defendant, respondent, on the stationery of Heat Transfer Products, Inc., was without the knowledge or consent of the defendant, respondent, or any of its officers. The only connection of the defendant, respondent, with Heat Transfer Products, Inc., was that the latter engaged the defendant, respondent, to manufacture the coolers in question. While defendant, respondent, aided Heat Transfer Products, Inc., by financing its business, the latter was never a subsidiary of the defendant, respondent, nor did the latter control a majority of the stock of Heat Transfer Products, Inc. The undisputed testimony is that merchandise which the shipbuilding company could not manufacture was contracted for by Heat Transfer Products, Inc., with outside concerns.

The evidence disclosed a bare-faced attempt on the part of the plaintiff, after it was unable to collect its damages from the party with whom it had contracted, to collect from the defendant, respondent, Staten Island Shipbuilding Company, liquidated damages which plaintiff claims to have sustained under its contract with

Heat Transfer Products, Inc., by reason of the failure of the latter to deliver the water coolers in question. This the plaintiff should not be permitted to do.

The judgment so far as appealed from was right and should be affirmed.

Judgment so far as appealed from reversed and a new trial ordered with costs to the appellant to abide the event.